O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINCOLN IMPORTS LTD., INC., | CASE NO. SACV 11-1098-JST (ANx) |
| Plaintiff, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'/ COUNTER-DEFENDANTS' MOTION TO DISMISS** |
| WEAVER FLOWER CO., KEN WEAVER, PAUL WEAVER, COSTCO WHOLESALE CORPORATION, | |
| Defendants. | |
| WEAVER FLOWER CO., KEN WEAVER, PAUL WEAVER, COSTCO WHOLESALE CORPORATION | |
| Counterclaimants, | |
| vs. | |
| LINCOLN IMPORTS LTD., INC., and MATTHEW LEUNG, | |
| Counter-Defendants. | |

1    Before the Court is a Motion to Dismiss filed by Plaintiff /Counter-Defendant
2 Lincoln Imports LTD., Inc. ("Lincoln") and Counter-Defendant Matthew Leung.  (Mot.,
3 Doc. 10.)  Lincoln seeks to dismiss all of the counterclaims asserted by
4 Defendants/Counterclaimants Weaver Flower Co. ("Weaver Flower"), Ken Weaver, and
5 Paul Weaver (collectively "Defendants").  (*Id.*)  Defendants opposed Lincoln's Motion,
6 and Lincoln replied.  (Opp'n, Doc. 20; Reply, Doc. 22.)  For the reasons set forth below,
7 the Court GRANTS IN PART and DENIES IN PART Lincoln's motion.

## I.    Background[1]

Defendants are in the business of selling plant décor items to retailers, and Lincoln is in the business of importing products for wholesalers like Defendants.  (Countercl. ¶¶ 9-10, Doc. 5.)  Defendants began using Lincoln as a non-exclusive importer of component products in or about 2004.  (*Id.* ¶ 12.)  In 2007, Defendants and Lincoln entered into an agreement (the "Agreement"), according to which Weaver Flower would purchase its component products from Lincoln and Lincoln would charge Weaver the cost of the products plus a 20%-22.5% commission.  (*Id.*)  From 2007 through 2010, Lincoln delivered goods to Defendants and Defendants accepted the goods under the Agreement. (*Id.* ¶ 14.)  Lincoln affirmed the terms of the Agreement at various times throughout its relationship with Defendants. (*Id.* ¶ 15.)  Several times during this relationship, Lincoln untimely delivered poor quality products and overcharged Weaver Flower. (*Id.* ¶¶ 16-17.)

Defendants filed their Counterclaim on September 1, 2011, asserting the following counterclaims: (1) Breach of Contract, (2) Fraud and Misrepresentation, (3) Negligence, (4) Accounting, (5) Intentional Interference with Prospective Economic Relations, (6)

---

[1] The Court accepts as true all allegations of material fact made in Defendants' Counterclaim.  *See Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

1

Defamation, and (7) Alter Ego Liability against Matthew Leung.  (*See* Counterclaim.) Plaintiffs seek to dismiss each of these counterclaims.

**II.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 S. Ct. at 1949-50 (quoting *Twombly*, 550 U.S. at 555).

Where a claim for fraud is asserted, Federal Rule of Civil Procedure ("FRCP") 9(b) requires heightened pleading.  Fed. R. Civ. P. 9(b). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular

misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations and quotation marks omitted). While the Rule 9(b) requirement is a federally imposed rule, "a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action." *Id.* at 1103. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* at 1106 (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)). The elements of fraud under California law are: (1) a misrepresentation; (2) knowledge of the falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941).

**III.   Discussion**

    1.   Breach of Contract

Defendants' first counterclaim for Breach of Contract is based on Lincoln's representations in the Agreement that it would timely deliver quality products and that it would charge Weaver Flower according to the specified mark-ups in exchange for Weaver Flower exclusively purchasing from Lincoln. (Countercl. ¶ 12.) Defendants contend that Lincoln breached the agreement by making late deliveries of poor quality goods and charging Weaver Flower rates which greatly exceeded the agreed markups. (*Id.* at ¶ 16.)

"A cause of action for breach of contract [includes] . . . the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado,* 158 Cal. App. 4th 1226, 1239 (2008). Lincoln asserts that Defendants have failed to allege that they paid for the goods, and therefore, have failed to allege performance. (Mot. at 8.) As pled, the Agreement does not impose a payment requirement on Weaver Flower. Instead, one plausible inference from the allegation is that the Agreement addressed the mutual promises of exclusivity, delivery, and pricing, while

1  payment would be addressed in subsequent invoices.  *See Vision Tech. Design & Mftg v.*
2  *Gen. Wire Spring Co.*, No. CV-F-07-412 OWW/WMW, 2007 WL 2069945, at *10, *14
3  (E.D. Cal. July 17, 2007) (addressing breach of a specific requirements agreements as a
4  separate issue from breach of purchase orders created thereunder).  Therefore, Lincoln's
5  motion to dismiss Defendants' breach of contract counterclaim is DENIED.

7      2. Fraud and Misrepresentation
8      This counterclaim is based on allegations that Lincoln made the pricing
9  representations "with the intent to defraud and induce Weaver Flower" to agree to
10 purchase the products exclusively through Lincoln. (Countercl. ¶¶ 21-22.)  Defendants
11 allege that they did not know Lincoln's representations were false at the time of entering
12 into the Agreement and only found out about the overcharging after 2010 when they began
13 to deal directly with factory vendors in purchasing their component products. (*Id.* ¶¶ 22-
14 23.)  Defendants assert that Lincoln knew that Defendants relied upon Lincoln's repeated
15 assurances and material representations to their detriment and that, by virtue of the
16 Agreement, Defendants had no reason to know it was being overcharged.  (*Id.* ¶¶ 25-26.)
17     Based on these allegations, it appears Defendants attempt to state a claim for
18 promissory fraud.  *See Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 973 (1997) ("A
19 promise to do something necessarily implies the intention to perform; hence, where a
20 promise is made without such intention, there is an implied misrepresentation of fact that
21 may be actionable fraud.")  However, these allegations are insufficient to satisfy the
22 heightened pleading required by FRCP 9(b).  Defendants' Counterclaim lacks the specific
23 facts that provide "the who, what, when, where, and how" necessary to give Lincoln notice
24 of the particular misconduct being alleged regarding the specific elements of fraud. *Vess*,
25 317 F.3d at 1106. Therefore, Defendants counterclaim for Fraud or Misrepresentation is
26 DISMISSED WITHOUT PREJUDICE.
27
28

### 3. Negligence

Under Defendants' third counterclaim for negligence, they assert that Lincoln had a duty to ensure that the amounts it charged Weaver Flower were correct and to timely deliver quality products. (Countercl. ¶¶ 32-33.) Lincoln relies on the economic loss rule for dismissal of this claim, asserting that Defendants are limited to contract damages. (Mot. at 10.)

As a general rule under California law, "plaintiffs may not recover for the same loss in both contract and in tort." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1068 (9th Cir. 2011). Here, Defendants' allegations under the heading of negligence—that Lincoln failed to timely deliver quality goods and ensure that the amounts charged were accurate—fall squarely within the terms of contract. Therefore, Defendants' negligence counterclaims are DISMISSED WITH PREJUDICE.

### 4. Accounting

Defendants' fourth counterclaim for an accounting of finances is based on the alleged fact Lincoln has exclusive knowledge of the costs the manufacturers charged Lincoln as compared to the amounts Lincoln charged Weaver Flower, which are necessary to determine how much Lincoln owes Defendants. (Countercl. ¶ 38.)

An action for an accounting is an equitable action "appropriate where the balance due . . . is unknown and cannot be ascertained by way of a calculation." *Chase Inv. Svcs. Corp. v. Law Offices of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010) (internal citations omitted). Here, Defendants have sufficiently asserted that the amounts owed are exclusively within Lincoln's knowledge and cannot be reasonably ascertained by way of calculation. Therefore, Lincoln's motion to dismiss Defendants' accounting counterclaim is DENIED.

### 5. Intentional Interference with Prospective Economic Relations

Defendants' fifth claim for intentional interference with prospective economic relations is based on allegations that Lincoln disrupted Defendants' relations with manufacturers after Defendants sought to directly purchase products from the manufacturers instead of purchasing through Lincoln. (Countercl. ¶ 41.) Defendants allege that one of these manufacturers was XTOP and that Lincoln encouraged XTOP to withhold shipment on goods at a critical time, after Weaver Flower had already paid the invoices for the goods, in order to disrupt the business relationship between Weaver Flower and XTOP. (*Id.* ¶¶ 42-45.)

A "claim for interference with prospective economic advantage requires: '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Griner v. Mercurio*, No. CV 05-6583 DSF(RCx), 2005 WL 6133906, at *11 (C.D.Cal. Dec. 06, 2005) (quoting *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 852 (9th Cir. 2004)). Lincoln bases its motion to dismiss this claim on Defendant's failure to properly plead that they were in an "economic relationship" with the manufacturers. (Mot. at 11.) However, Defendants have sufficiently alleged enough facts that a claim for relief is plausible. Therefore, Lincoln's motion to dismiss Defendants' counterclaim for intentional interference with prospective economic relations is DENIED.

### 6. Defamation

Defendants' counterclaim for defamation is based on the assertion that "Lincoln made one or more statements to manufacturing companies . . . falsely representing Weaver Flower had not paid for product from their factories when in fact Weaver Flower had

directly paid Lincoln." (Countercl. ¶¶ 48-49.) The tort of defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom the reference is made." *Id.* Furthermore, "communication to a single individual is sufficient." *Id.*

Here, Defendants' allegations are sufficient to support a defamation claim. Therefore, Lincoln's motion to dismiss Defendants' defamation counterclaim is DENIED.

### 7. <u>Alter Ego against Matthew Leung</u>

Defendants' final counterclaim for alter ego liability alleges that Matthew Leung conducted the affairs and business of Lincoln as his alter ego by "engaging in conducts [sic], acts or omission including . . . disregarding required corporate formalities, applying corporate funds and other corporate assets to his personal use, and failing to adequately capitalize the corporation." (Countercl. ¶ 55.) Defendants allege that it would be unjust to uphold Lincoln as a corporate entity and allow Matthew Leung to escape personal liability. (*Id.* at ¶ 56.)

"[I]n order for an alter ego liability to apply, two conditions must be met: '(1) such a unity of interests in ownership exists so as to dissolve the separate corporate personalities of the parent and the subsidiary, relegating the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former, and (2) an inequitable result will occur if the conduct is treated as that of the subsidiary alone." *Bleu Products, Inc. v. Bureau Veritas Consumer Product Svcs, Inc.*, No CV 08-2591CAS (JCx), 2009 WL 2412413, at *12 (C.D. Cal. Aug. 3, 2009) (quoting *Veterinary Pathology, Inc. v. Cal. Health Labs., Inc.*, 116 Cal. App. 3d 111, 119 (1981)). Defendants have pled sufficient facts to satisfy these conditions. *See Fed. Reserve Bank of San Francisco v. HK Sys.*, No.

C-95-1190 MHP, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997) (concluding that an alter ego claim was sufficiently pled where plaintiff alleged that defendants disregarded corporate form and defendant corporation was so inadequately capitalized that its capitalization was illusory). Therefore, Lincoln's motion to dismiss Defendants' alter ego claim is DENIED.

### IV.     Conclusion

For the foregoing reasons, Lincoln's Motion to Dismiss Defendants' counterclaims for Fraud and Misrepresentation and Negligence are GRANTED. Defendants' counterclaim for Fraud and Misrepresentation is DISMISSED WITHOUT PREJUDICE, and Defendants' counterclaim for Negligence is DISMISSED WITH PREJUDICE. Lincoln's Motion to Dismiss Defendants' counterclaims for Breach of Contract, Accounting, Intentional Interference with Prospective Economic Relations, Defamation, and Alter Ego against Matthew Leung are DENIED. Defendants may file an amended Counterclaim, if they can do so consistent with this Order, no later than **April 11, 2012**.

DATED:  March 27, 2012

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE
